UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| VIJAY K. TANEJA *et al.* | ) | Case No. 08-13293-SSM |
| | ) | Chapter 11 (Jointly Administered) |
| Debtors | ) | |
| | ) | |
| H. JASON GOLD, TRUSTEE | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding Nos. 10-1234, |
| | ) | 10-1235, 10-1236, 10-1237, 10-1238 |
| OLD REPUBLIC NATIONAL TITLE INS. | ) | |
| CO., *et al.* | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OPINION**

The defendant title insurance companies in these five adversary proceedings have moved to dismiss the complaints filed by the chapter 11 trustee seeking collectively some $68 million in damages[1] based on mortgage loans for which the insurers provided closing protection letters and title insurance policies. Following oral argument on September 24, 2010, the court took the

---

[1] The moving defendants and the damages sought against them are as follows:

| Defendant | A.P. No. | Amount Claimed |
|---|---|---|
| Old Republic Nat'l Title Ins. Co | 10-1234 | $ 22,254,350 |
| Chicago Title Ins. Co. | 10-1235 | $ 1,700,000 |
| Commonwealth Land Title Ins. Co. | 10-1236 | $ 8,031,150 |
| Fidelity Nat'l Title Ins. Co. | 10-1237 | $ 34,835,590 |
| First American Title Ins. Co. | 10-1238 | $ 1,658,750 |
| Total | | $ 68,479,840 |

issues under advisement and is now prepared to rule. For the reasons stated, the motions to dismiss will be granted.

## Background

On June 9, 2008, Vijay K. Taneja ("the debtor") and four companies controlled by him, including a mortgage loan originator known as Financial Mortgage, Inc. ("FMI"), filed voluntary petitions in this court for reorganization under chapter 11 of the Bankruptcy Code.[2] H. Jason Gold has been appointed as chapter 11 trustee in all five cases, which are being jointly administered.

On June 9, 2010, the trustee filed the complaints that are presently before the court against the defendant title insurance companies and the settlement agents, eleven in number, who closed the loans in controversy.[3] Although the specific transactions differ, the general thrust of each complaint is that FMI—which was wholly-owned and controlled by Taneja—originated a large number of mortgage loans for which the defendant title insurers provided closing protection letters, title insurance commitments, and title insurance policies  The closing protection letters—which were addressed to FMI as the lender—typically contained language that the title insurer would

> reimburse you [FMI] for actual loss incurred by you in connection with . . . closings when conducted by an Issuing Agent . . . and when such loss arises out of:

---

[2] The four companies were Elite Entertainment, Inc., Case No. 08-13286-SSM; Financial Mortgage, Inc., Case No. 08-13287-SSM; NRM Investments, Inc., Case No. 08-13290-SSM; and Taneja Center, Inc., Case No. 08-13292-SSM.

[3] None of the settlement companies appear to have been served with process in these actions, and no appearance has been made by them.

>   1.  Failure of the Issuing Agent . . . to comply with your written closing instructions to the extent that they relate to (a) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including . . . the disbursement of funds necessary to establish such status of title or lien . . . , or
>
>   2.  Fraud or dishonesty of the Issuing Agent . . . in handling your funds or documents in connection with such closings to the extent such fraud or dishonesty relates to the status of the title to said interest in land or to the validity, enforceability and priority of the lien of said mortgage on said interest in land.

Exh. A to complaint in A.P. No. 10-1234. The complaints allege that the settlement agents, at the instigation of Taneja, failed to pay off prior encumbrances or to record mortgages securing the new loans.[4] The complaint further alleges that the loans were then sold by FMI to secondary market purchasers. Significantly, there is no allegation that FMI is the holder of any of the notes executed in connection the loan transactions described in the complaints or that FMI itself has suffered any articulable loss from failure of the closing agents to properly record deeds of trust or to disburse funds to pay off prior encumbrances.[5]

---

[4] Taneja ultimately pleaded guilty to a single count of conspiracy to launder money in violation of 18 U.S.C. § 1956(h) and was sentenced to 84 months imprisonment. *U.S. v. Taneja*, No. 1:08-cr-428-CMH (E.D. Va., January 30, 2009). A statement of facts (Doc. # 5) filed in connection with the guilty plea provides a detailed explanation of how Taneja used FMI to further his fraudulent schemes. It not only makes for interesting reading, but helps to place the present litigation in a larger context. However, the court agrees with the plaintiff that the statement of facts is not part of the record for the purpose of the present motions.

[5] More accurately, the complaints do repeatedly allege, but only in conclusory terms, that FMI has been damaged. What they fail to explain is how FMI, when it is not the current holder of any of the loans, has suffered any actual financial loss. This is rather fundamental, because if a lender makes a loan on the supposed security of a first-lien deed of trust, and it turns out, when the loan goes sour, that the lien is not in first position after all, or indeed may not even exist, the lender has suffered an obvious loss. But when the loan is sold, the lender's coffers are replenished, and the immediate loss, when the loan goes sour, falls on the purchaser. Indeed, at least one of those purchasers, Wells Fargo Bank, has brought its own virtually identical suit

(continued...)

Discussion

An action may be dismissed at the outset of the litigation if the complaint fails to state a claim upon which relief can be granted.  Rule 12(b)(6), Fed. R. Civ. P.;  Rule 7012, Fed. R. Bankr. P.  Under settled principles, the well-pleaded facts must be taken as true and must be construed in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).  Nevertheless, a plaintiff must provide grounds for entitlement to relief, which requires more than labels and conclusions or a formulaic recitation of the elements of a cause of action.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).   In particular, in order to survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Each of the complaints before the court is pleaded in six counts, as follows:

- Count 1.  Breach of a unitary contract consisting of a title commitment, title insurance policy, and closing protection letter for each loan transaction, by failing "to compensate FMI for the damages and losses that FMI incurred."

---

[5](...continued)
against one of the defendant title insurers here, Old Republic.  *Wells Fargo Bank, N.A., v. Old Republic Nat'l Title Ins. Co.,* No. 1:09-cv-297-CMH (E.D. Va.).  But if Wells Fargo, as the unlucky noteholder, has a right to recover under the closing protection letter, title commitment, and title insurance policy, it is difficult, to say the least, to see how FMI—simply because it originated the loan—has an independent claim.  And, of course, if the right of recovery belongs to the secondary market purchasers rather than to FMI, the trustee lacks standing to pursue them. *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972) (holding that a bankruptcy trustee did not have standing to bring suit against the underwriter of the debtor's debentures for damages sustained by the debenture holders when the underwriter failed in its obligation to monitor the debtor's asset-liability ratio, since trustee is not authorized to collect money owed to creditors rather than to the estate.).

- Count 2.  Statutory conspiracy under § 18.2-499, Code of Virginia, based on the defendant title insurers' alleged liability, as principal, for the actions of settlement agents in conspiring with Taneja to defraud FMI.

- Count 3.  Common law conspiracy, based on the defendant title insurers' alleged liability, as principal, for the actions of the settlement agents in conspiring with Taneja to defraud FMI, secondary market purchasers, and property owners.

- Count 4.  Fraud based on false representations by the settlement agents to FMI that each of the real estate transactions identified in the complaints "would be closed in accordance with the loan documents, loan instructions, settlement statements, and CPL's," with the defendant title insurers being vicariously liable, as principals, for the false representations by the title insurance agents.

- Count 5.  Violation of the Virginia Wet Settlement Act, § 6.1-2.13, Code of Virginia, as a result of the settlement agents failing to timely record deeds and deeds of trust, disbursing funds prior to the recording of the deeds and deeds of trust, and not disbursing funds in accordance with the settlement statements.

- Count 6.  Negligence by the settlement agents in failing to exercise reasonable care in "issuing title insurance, recording title instruments (such as deeds, deeds of trust, mortgages and other title-related documents), performing record searches, reporting the results of record searches, preparing title and closing documents and receiving and disbursing funds," and specifically by "failing to disclose the existence of encumbrances that had been duly recorded in county land records, failing to record deeds of trust in county land records, and failing to use settlement proceeds to pay down title encumbrances as reflected in HUD settlement statements."

The defendant title insurers assert that each of the pleaded counts fails to state a claim for relief because the pleaded facts plainly show that any claims the trustee may have as successor to FMI are barred by the doctrine of *in pari delicto;* that as a matter of law the closing protection letters do not indemnify FMI from its own fraud; that the title insurance commitments and title insurance policies do not cover title problems "suffered, created, assumed, or agreed to by the insured claimant;" and that the title insurers are not liable, under a theory of *respondeat superior*, for the misdeeds of the settlement agents.  Because the first and last of these arguments are dispositive, the court will limit its discussion accordingly.

A. In Pari Delicto

The defendant title insurers argue that because the claims set forth by the chapter 11 trustee arise out of the fraud of the debtor's president and sole shareholder, they are barred by the common-law doctrine of *in pari delicto*. That doctrine has been described by the Fourth Circuit as "an affirmative defense that bars a wrongdoer from recovering against his alleged coconspirators." *Logan v. JKV Real Estate Services (In re Bogdan),* 414 F.3d 507, 514 (4th Cir. 2005); *see, also, Grassmeuck v. American Shorthorn Assn.*, 402 F.3d 833, 837 (8th Cir. 2005) (explaining that *in pari delicto* is "the principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing."). Of course, no one is accusing the chapter 11 trustee, Mr. Gold, of wrongdoing. But to the extent he is pursuing FMI's own cause of action, his claim cannot rise any higher than FMI's and is subject to any defense that could have been raised against FMI, including the defense of *in pari delicto*. *Grassmeuck*, 402 F.3d at 836.

As a corporation, FMI is a separate legal entity from Taneja. As its president, however, Taneja was unquestionably FMI's agent. It is true that if an agent acts adversely to the interest of the principal, the agency is destroyed, and the acts of the agent are no longer attributable to the principal for the purpose of applying the *in pari delicto* defense. *Wright v. BankAmerica Corp.,* 219 F.3d 79, 86 (2nd Cir. 2000). This so-called "adverse interest" exception, however, is itself subject to what has been termed the "sole actor" exception, which holds that when the persons controlling the corporation orchestrate the unlawful conduct so that the conduct is perpetrated by the only persons who could put an end to it, the conduct is attributable to the

corporation, and the doctrine of *in pari delicto* does apply.  *Mediators, Inc. v. Manney* (*In re Mediators, Inc.*), 105 F.3d 822, 827 (2nd Cir. 1997).

A number of decisions at the Court of Appeals level have recognized that the *in pari delicto* defense is available to third parties sued by the representative of a bankruptcy estate. One such case that seems especially apropos is *Breeden v. Kirkpatrick & Lockhart LLP (In re The Bennett Funding Group, Inc.)*, 336 F.3d 94 (2d Cir. 2003).  In that case, the debtor's only shareholders were the parents of the debtor's CFO and deputy CEO.  All of the family members were on the board of directors and picked the other members of the board. The trustee sued the debtor's law firm and accounting firm for negligence, alleging that they should have known that the debtor was being used as part of a Ponzi scheme.  The actions of the CFO, who controlled the financial operation of the debtor and benefitted from the fraud to the detriment of the debtor, were imputed to the debtor.  The CFO's imputed actions barred the trustee from pursuing his claims unless at least one decision maker of the debtor could have stopped the fraud.  No such decision maker existed in that case, and the Second Circuit affirmed summary judgment dismissing the negligence claims.

To similar effect is *Terlecky v. Hurd (In re Dublin Securities Inc.)*, 133 F.3d 377 (6th Cir. 1997).  In that case, the debtor allegedly conspired with its law firms and lawyers in connection with a fraudulent initial public stock offering.  After the debtor filed a chapter 7 case, the trustee sued the law firms and lawyers, asserting claims for negligence, breach of fiduciary duty, negligent misrepresentation, recklessness, common law fraud and the right of contribution.  The district court granted the defendants' motion to dismiss on the basis that the trustee's claims were barred by the doctrine of *in pari delicto* and on standing grounds . The Sixth Circuit affirmed the

district court's ruling, finding that the debtor was at least as culpable as the defendants and that the doctrine of *in pari delicto* warranted dismissal of the trustee's complaint. The Sixth Circuit did not reach the issue of standing because *in pari delicto* alone justified dismissal. *Id*. at 380.

And in *Grassmeuck*, cited above, the chapter 7 trustee alleged that the debtors—several limited partnerships that carried on cattle-raising operations—constituted a fraudulent investment scheme orchestrated by the general partner. The trustee brought suit against a cattle association and its president for negligent breach of duty in certifying and registering the cattle whose supposed value supported the investments. The district court granted summary judgment in favor of the defendants, and the Eighth Circuit affirmed. Applying the sole actor exception, the Court held that the general partner's fraud was imputed to the investment partnerships, and that the trustee was barred by the doctrine of *in pari delicto* from pursuing his negligence claims.

To be sure, *in pari delicto* does not apply when a trustee is proceeding, not as successor to the debtor, but under one of the trustee's statutory avoidance powers, for example when pursuing a fraudulent conveyance under § 548, Bankruptcy Code. *See*, *e.g., Alberts v. Tuft (In re Greater Southeast Comm. Hosp. Corp.)*, 333 B.R. 506 (Bankr. D. D.C. 2005). Nor does it apply when, as in *Bogdan*, the trustee has taken an actual assignment of the injured creditors' claims and is suing on their behalf and not the debtor's. But this is not an action under one or more of the trustee's avoidance powers, nor has the trustee obtained assignments from the innocent secondary market purchasers of their claims against FMI.

The allegations of the complaint establish that Taneja was the president and sole shareholder of FMI at the time the fraudulent loan transactions closed, and that it was at his instigation that loan funds were not disbursed to pay off prior encumbrances and that deeds of

trust were not recorded. Accordingly, the court concludes that under the sole-actor exception to the adverse-interest exception, Taneja's fraud is imputed to FMI, and that any claims by FMI against the defendant title insurers under the closing protection letters, title insurance commitments, and title insurance policies are barred by the doctrine of *in pari delicto*.

      B. Respondeat Superior

      As noted, the complaint alleges—as an alternative to the breach of contract claim—that the defendant title insurers are liable under a theory of respondeat superior for the misdeeds and negligence of the defendant settlement companies in connection with the identified loan transactions. That the defendant settlement companies were agents of the insurers for the purpose of issuing title insurance commitments and title insurance policies is undisputed, but the insurers vigorously deny that the settlement companies were acting for the insurer with respect to disbursement of funds, recording of instruments, or release of encumbrances.

      In this connection, the insurers have attached to their motions representative copies of the agency agreements. Although the plaintiff objects to the court's consideration of the agreements as being outside the four corners of the complaint, the plaintiff has not challenged their authenticity, and the court agrees with the defendants that because the existence of a written agency agreement is expressly alleged in the complaint, its terms can be considered in connection with the motions to dismiss. *Secretary of State for Defence v. Trimble Navigation Limited*, 484 F.3d 700, 705 (4th Cir. 2007) (explaining that court may consider documents attached to a motion to dismiss as long as they are integral to the complaint and authentic). Here, the agency agreement is quite specific both in delineating and in limiting the scope of the agency conferred upon the settlement companies:

> Insurer appoints Agent a policy issuing agent for insurer for the purpose of signing, countersigning and issuing commitments, binders, title reports, certificates, guarantees, title insurance policies, endorsements, and other agreements under which Insurer assumes liability for the condition of title.
>
> * * *
>
> The relationship created by this Agreement does not extend to (1) any escrow, closing or settlement business (hereinafter referred to as "Escrow Business") conducted by Agent and/or Agent's Principals, employees or Subcontractors;
>
> * * *
>
> Agent agrees not to receive nor receipt for any fund, including escrow funds, in the name of Insurer but, rather, shall receive and receipt for funds, including escrow funds, for its own account.

Second, in evaluating whether (notwithstanding the agency agreement) the complaint plausibly states a claim for *respondeat superior* liability based on apparent authority or requirements imposed by the Virginia Consumer Real Estate Settlement Protection Act, the court finds persuasive Judge Hilton's opinion in the action brought by Wells Fargo Bank alleging almost identical claims. *Wells Fargo Bank, N.A. v. Old Republic Nat'l Title Ins. Co.*, 2009 WL 4927145 (E.D. Va. 2009) (currently on appeal to the 4th Circuit). For the reasons ably stated by Judge Hilton, the court concludes that the settlement companies whose conduct the complaint seeks to impute to the defendant title insurers were, as a matter of law, agents only for the purpose of issuing title insurance commitments and policies and were not agents for the purpose of collecting and disbursing funds or recording instruments or releases.[6] Accordingly, even if the defense of *in pari delicto* did not apply to Counts 2 through 5, they would be dismissed for failure to state a plausible claim against the defendant insurers for the misconduct or negligence of the settlement companies.

---

[6] Although it is true that the *Wells Fargo* ruling was made in the context of a summary judgment motion, not a motion to dismiss, the court can see no reasonable likelihood that discovery in these actions would develop any further meaningful facts than were developed by Wells Fargo in its action.

A separate order will be entered in each adversary proceeding dismissing the complaint as to the defendant insurers.

Date: _____          _____
                                        Stephen S. Mitchell
Alexandria, Virginia                    United States Bankruptcy Judge

Copies to:

James P. Campbell, Esquire
Campbell Flannery, P.C.
19 East Market Street
Leesburg, VA 20176
Counsel for the plaintiff

Donald F. King, Esquire
Odin, Feldman & Pittleman
9302 Lee Highway, Suite 1100
Fairfax, VA 22031
Counsel for defendant Old Republic National Title Ins. Co.

Raighne C. Delaney, Esquire
Bean, Kinney & Korman, P.C.
2300 Wilson Boulevard, Seventh Floor
Arlington, VA 22201
Counsel for defendants Chicago Title Ins. Co,
  Commonwealth Land Title Ins. Co., and
  Fidelity Nat'l Title Ins. Co.

Christopher Allan Glaser, Esquire
Jackson & Campbell, P.C.
1120 20th Street, N.W.
Suite 300 South
Washington, DC 20036
Counsel for defendant First American Title Ins. Co.

Lawrence E. Rifken, Esquire
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1200
McLean, VA 22102
Counsel for the Official Committee of Unsecured Creditors